IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| GENASIS JOHNSON, ) | |
| ) | |
|    Plaintiff, ) | |
| ) | |
| v. ) | No. 2:21-cv-02384-SHM-cgc |
| ) | |
| BEL-SHORE ENTERPRISES, d/b/a ) | |
| PRO-MOTION DISTRIBUTING, ) | |
| ) | |
|    Defendant. ) | |
| ) | |

## ORDER

This is an employment discrimination case. Defendant Bel-Shore Enterprises ("Bel-Shore") filed a Motion to Dismiss and Compel Arbitration ("Motion to Dismiss and Compel") on September 28, 2021. (D.E. 10.) Plaintiff Genasis Johnson ("Johnson") filed a Response to Defendant's Motion to Dismiss and Compel ("Response") and a Motion for Limited Fact Discovery ("Motion for Discovery") on October 26, 2021. (D.E. 13.) Bel-Shore filed a Reply in Support of Its Motion to Dismiss and Compel ("Reply") on November 9, 2021. (D.E. 14.) For the following reasons, Bel-Shore's Motion to Dismiss and Compel is **GRANTED**. Johnson's Motion for Discovery is **DENIED**.

## I.   Background

Johnson worked at the Bel-Shore Memphis warehouse from 2016 until his termination on April 2, 2020. In his complaint, Johnson alleges race and sex discrimination under Title VII of the Civil

Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e-1, et. seq., retaliation under Title VII, race discrimination under 42 U.S.C. § 1981 ("§ 1981"), and retaliation under § 1981, all arising out of his employment with Bel-Shore. (D.E. 1 at ¶¶ 200-230.)

In its Motion to Dismiss and Compel, Bel-Shore argues that Johnson signed a Mediation and Arbitration Agreement (the "Arbitration Agreement") that requires arbitration of Johnson's discrimination and retaliation claims. The Motion includes a copy of the Arbitration Agreement that Johnson signed on March 15, 2019. The Agreement states in relevant part:

> In consideration of my employment and/or continued employment with [Bel-Shore] ("Employer"), I GENASIS JOHNSON ("Employee") and Employer . . . agree as follows:
>
> 1. ***Agreement to Mediate & Arbitrate/Definition of Claims.*** I and Employer agree to submit all "Claims" as defined below to mediation and if not resolved through mediation, to binding individual arbitration before a neutral arbitrator (the "Arbitrator"). Mediation and, if necessary, arbitration of Claims covered by this Agreement is the sole and exclusive method of resolving any and all Claims.
>
> "Claim(s)" means any claim, dispute, or controversy regarding contracts, confidentiality agreements, the California Trade Secrets Act, personal injuries, torts, discrimination and harassment (including matters such as race, color, ancestry, sex, sexual orientation, religion, national origin, age, disability or veteran status, all as defined under applicable laws), wages, compensation, benefits, and claims under any federal, state, city or county laws, statutes, regulations or ordinances between Employee and Employer, its parents, subsidiaries, and affiliated corporations and entities, and their present and former officers, directors, agents, representatives and employees (collectively "Company") including, but not limited to, any and all

claims that arose at any time before or after execution of this Agreement relating in any way to the application and hiring process of Employee, the employment of Employee, payment of wages and the termination of that employment, or post-employment.

. . . .

**_10. Complete Agreement._** This Agreement is the complete agreement between the Parties regarding the subjects covered in it and supersedes any and all prior representations, understandings, and agreements. This Agreement can only be modified in a writing expressly referencing this Agreement by an authorized representative of Company. If a modification is made to comply with applicable law and has not been signed by Employee, but Employee continues to accept employment or other benefits from Company after having notice of the modification, the modification shall become effective after a reasonable period.

. . . .

I HAVE READ AND UNDERSTAND AND VOLUNTARILY AGREE TO BE LEGALLY BOUND BY ALL OF THE ABOVE TERMS. I FURTHER UNDERSTAND THAT THIS AGREEMENT REQUIRES ME TO ARBITRATE ANY AND ALL DISPUTES THAT ARISE OUT OF MY EMPLOYMENT.

(D.E. 10-1, PageID 60, 62, 63 (emphasis in original).)

The Motion to Dismiss and Compel also includes the Declaration of David Jannetta ("Jannetta"). (D.E. 10-2.) Bel-Shore employs Jannetta as an Administrative Officer (Consultant). In his Declaration, Jannetta states that he presented the Arbitration Agreement and other documents to employees at the Bel-Shore Memphis warehouse on Friday, February 15, 2019. (D.E. 10-2 at ¶ 2.) He read verbatim from a prepared script and told employees to carefully read and familiarize themselves with the Arbitration Agreement. (D.E. 10-2 at ¶ 5.) Jannetta requested that employees

return signed Arbitration Agreements to their supervisor by the following Friday. (D.E. 10-2 at ¶ 5.)

Johnson's Response includes the Declaration of Genasis Johnson (D.E. 13-1), the Declaration of Arthur Medina (D.E. 13-3), a copy of a Company Handbook (D.E. 13-2, PageID 89-131), and a Confirmation of Receipt of Handbook signed by Johnson on March 15, 2019 (D.E. 13-2, PageID 133). The Confirmation of Receipt is found on the last page of the Handbook. A signature on the Confirmation of Receipt "certifies" that the employee "must conform to and abide by the rules and requirements described in [the Handbook]." (D.E. 13-2, PageID 133.)

In his Declaration, Johnson states that Jannetta's presentation to Memphis warehouse employees occurred on March 15, 2019. (D.E. 13-1 at ¶¶ 5-6.) Jannetta handed out the Company Handbook, the Arbitration Agreement, and other documents and asked employees to sign the documents immediately. (D.E. 13-1 at ¶ 8.) Johnson was not told that he could take the Arbitration Agreement home and read it or consult a lawyer about the Agreement. (D.E. 13-1 at ¶ 12.) He does not recognize the first three pages of the Agreement. (D.E. 13-1 at ¶ 13.) He was only allowed to keep the Company Handbook. (D.E. 13-1 at ¶ 8.) Jannetta told employees that they "had nothing to worry about as this was just procedure to say [they] had the company's handbook." (D.E. 13-1 at ¶ 9.)

Arthur Medina was the Operations Manager at Bel-Shore in 2019. In his Declaration, Medina states that in March 2019, he received the Arbitration Agreement, Company Handbook, and other documents along with a prepared script explaining the documents. (D.E. 13-3, PageID 134.) Medina attaches the prepared script to his Declaration. (D.E. 13-3, PageID 136.) Jannetta presented the documents to Bel-Shore employees at all of Bel-Shore's locations, including Memphis. (D.E. 13-3, PageID 134.) Medina confirms that Jannetta followed the script during the presentations. (D.E. 13-3, PageID 134.) Brian Malewicz, Bel-Shore's CFO, told Medina to "ensure that all the documents from all employees were signed and turned in the day each presentation was made at each location." (D.E. 13-3, PageID 134.) Medina listened on speakerphone to each presentation and recalls "that not one employee asked questions regarding the content of the documents." (D.E. 13-3, PageID 134.)

## II. Jurisdiction and Choice of Law

### A.    Jurisdiction

The Court has subject matter jurisdiction over Johnson's Title VII and § 1981 claims under the general grant of federal question jurisdiction in 28 U.S.C. § 1331.

### B.    Choice of Law

Under the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1, et seq., arbitration agreements may be invalid on grounds that "exist at law" for the revocation of contracts. See 9 U.S.C. § 2. "In

other words, whether an arbitration clause is enforceable is governed by state law." Stutler v. T.K. Constructors, Inc., 448 F.3d 343, 345 (6th Cir. 2006). State law determines the applicability of contract defenses such as fraud, duress, or unconscionability. Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681, 686-87 (1996); see also Floss v. Ryan's Fam. Steak House, Inc., 211 F.3d 306, 314-15 (6th Cir. 2000).

When there is no dispute that a certain state's substantive law applies, the court need not conduct a choice-of-law analysis sua sponte. See GBJ Corp. v. E. Ohio Paving Co., 139 F.3d 1080, 1085 (6th Cir. 1998). The Arbitration Agreement states that "underlying Claims shall be governed by the laws of the State of California and applicable federal law." (D.E. 10-1, PageID 61.) In his Response, Johnson disputes the validity of the Arbitration Agreement and argues that the Court should apply Tennessee law instead of California law. (D.E. 13, PageID 75-76.) Bel-Shore argues that the Arbitration Agreement is valid, but does not dispute the application of Tennessee law. (D.E. 14, PageID 148, n.1) Because the application of Tennessee law is undisputed, the Court applies Tennessee law.

### III. Standard of Review

The FAA strongly favors arbitration. See EEOC v. Waffle House, Inc., 534 U.S. 279, 289 (2002). The Court is required to determine whether there is a valid arbitration agreement and whether the

claims fall within the scope of the agreement. <u>Landis v. Pinnacle Eye Care, LLC.</u>, 537 F.3d 559, 561 (6th Cir. 2008). "[A]s a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." <u>Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.</u>, 460 U.S. 1, 24-25 (1983).

When there is a written agreement to arbitrate and a party refuses to arbitrate, the other party may petition the district court to compel the refusing party to comply with the terms of the agreement. <u>See</u> 9 U.S.C. § 4. The showing necessary to compel arbitration absent trial is the same as the showing necessary for summary judgment in a civil action. <u>See</u> <u>Great Earth Cos., Inc. v. Simons</u>, 288 F.3d 878, 889 (6th Cir. 2002) (citing <u>Doctor's Assocs., Inc. v. Distajo</u>, 107 F.3d 126, 129-30 (2d Cir. 1997)). The movant bears the burden of establishing the existence of "a binding agreement to arbitrate." <u>In re First Thermal Sys., Inc.</u>, 182 B.R. 510, 513 (Bankr. E.D. Tenn. 1995). If that showing is made, the burden shifts to the nonmovant to demonstrate that the validity of the agreement is "in issue." <u>Great Earth Cos.</u>, 288 F.3d at 889. To show that the validity of an arbitration agreement is "in issue," the nonmovant "must show a genuine issue of material fact as to the validity of the agreement to arbitrate." <u>Id.</u> Courts must

construe the facts and reasonable inferences in the light most favorable to the nonmovant. Id.

## IV.  Analysis

Bel-Shore has submitted Johnson's signed Arbitration Agreement. It has satisfied its burden of showing a binding arbitration agreement. Johnson argues that the Arbitration Agreement is invalid because 1) the Handbook and Confirmation of Receipt supersede the Arbitration Agreement; 2) the Arbitration Agreement is illusory; 3) the Arbitration Agreement was not the result of mutual assent; and 4) Johnson's acceptance of the Arbitration Agreement was not knowing and voluntary.

### A. Superseded Arbitration Agreement

Accepting Johnson's version of events, Bel-Shore's Memphis warehouse employees received the Company Handbook, Confirmation of Receipt of Handbook, and Arbitration Agreement on March 15, 2019. Johnson signed the Confirmation of Receipt and Arbitration Agreement on March 15, 2019. He does not specify which document he signed first. However, Johnson argues that the Company Handbook and Confirmation of Receipt supersede the Arbitration Agreement and make the Arbitration Agreement invalid.

The first page of the Company Handbook states, "This employee handbook contains the employment policies and practices of [the] Company in effect at the time of publication. All previously issued handbooks and any inconsistent policy statements or memoranda are

superseded." (D.E. 13-2, PageID 93.) The Handbook includes Bel-Shore's policies prohibiting harassment, discrimination, and retaliation. (D.E. 13-2, PageID 94-95.) It also explains how employees can initiate claims of discrimination through their supervisor, Human Resources, or a government agency such as the EEOC. (D.E. 13-2, PageID 96.) The Confirmation of Receipt has an integration provision that states:

> My signature certifies that I understand that the foregoing agreement on at-will status is the sole and entire agreement between Company and myself concerning the duration of my employment and the circumstances under which my employment may be terminated.
>
> . . . .
>
> I understand this employee handbook . . . is the entire agreement for the subject matters covered in this employee handbook.

(D.E. 13-2, PageID 133.)

Johnson's argument that the Handbook and Confirmation of Receipt supersede the Arbitration Agreement fails on the plain language of the documents. The Handbook policies are consistent with the Arbitration Agreement and do not supersede it. Although the Handbook describes the internal complaint process and says employees can raise issues with the EEOC, those policies do not contradict a policy of mandatory arbitration for employee claims. As Johnson acknowledges, the Handbook is silent on the issue of arbitration. The integration clause in the Confirmation of Receipt does not make the Arbitration Agreement invalid. The Handbook and

Confirmation of Receipt are the "entire agreement" for the duration of employment, the circumstances under which employment may be terminated, and other issues addressed in the Handbook. Mandatory arbitration of employee claims is not addressed in the Handbook or Confirmation of Receipt. The integration clause does not prevent the adoption of a separate arbitration agreement.

Johnson's argument is also inconsistent with the clear intent of the Handbook, Confirmation of Receipt, and Arbitration Agreement. When a court interprets a contract under Tennessee law, its "role is to ascertain the intention of the parties." MLG Enterprises, LLC v. Johnson, 507 S.W.3d 183, 186 (Tenn. 2016) (quoting 84 Lumber Co. v. Smith, 356 S.W.3d 380, 383 (Tenn. 2011)). A court may assume that parties do not intend contemporaneously signed documents to wholly supersede each other. See Wright v. SSC Nashville Operating Co. LLC, No. 3:16-CV-00768, 2017 WL 914586, at *3 (M.D. Tenn. Mar. 8, 2017) ("It would make little sense to sign the [arbitration agreement] while at the same time expecting it to be wholly superseded.") Johnson received the Handbook, Confirmation of Receipt, and Arbitration Agreement at the same time and signed the documents on the same date. The documents were contemporaneous. Section 10 of the Arbitration Agreement contains its own integration clause. That provision purports to supersede all agreements between the parties governing arbitration. Johnson does not address the conflict between the two integration clauses.

He does not explain why general provisions in the Handbook and Confirmation of Receipt should prevail over specific provisions in the Arbitration Agreement. The most plausible reading of the documents is that the Arbitration Agreement is not superseded by the Handbook or Confirmation of Receipt.

**B.   Illusory Contract**

Johnson's argument that the Arbitration Agreement is illusory rests on similar grounds and fails for similar reasons. He says that the Company Handbook and the Confirmation of Receipt allow Bel-Shore to revise all policies unilaterally. The Company Handbook states, "The Company reserves the right to revise, modify, delete or add to any and all policies, procedures, work rules, or benefits stated in this handbook or in any other document, except for the policy of at-will employment." The Confirmation of Receipt similarly states, "[The Employee] understand[s] that except for employment at-will status, any and all policies or practices can be changed at any time by Company." (D.E. 13-2, PageID 133.) Johnson argues that Bel-shore's unilateral power to revise makes the Arbitration Agreement illusory and unsupported by consideration.

"[A] promise is legally enforceable only if the promisor receives in exchange for that promise some act or forbearance, or the promise thereof." Floss, 211 F.3d at 315 (citing Kozy v. Werle, 902 S.W.2d 404, 411 (Tenn. Ct. App. 1995)). Under Tennessee law,

11

continued employment and mutual obligations to be bound are sufficient consideration to support an arbitration agreement. See Fisher v. GE Med. Sys., 276 F. Supp. 2d 891, 895 (M.D. Tenn. 2003). "[A]n illusory promise arises when a promisor retains the right to decide whether or not to perform the promised act." Floss, 211 F.3d at 315. "Tennessee law requires that a contract not be illusory, that is, that it impose genuine obligations on both parties." Seawright v. Am. Gen. Fin. Servs., Inc., 507 F.3d 967, 975 (6th Cir. 2007) (citing Parks v. Morris, 914 S.W.2d 545, 550 (Tenn. Ct. App. 1995)).

The Arbitration Agreement is a separate agreement, not superseded by the Handbook or Confirmation of Receipt. See supra Section VI.A. Johnson's continued employment and the parties' mutual obligation to arbitrate claims are consideration for the Arbitration Agreement. See Fisher, 276 F. Supp. 2d at 895; D.E. 10-1, PageID 60.) Section 10 of the Arbitration Agreement sets out the modification procedures for the Arbitration Agreement. (D.E. 10-1, PageID 62.) The Agreement can be modified in a writing signed by the employee and an authorized Bel-Shore representative. If the modification is made to comply with applicable law, Bel-Shore is entitled to modify the Arbitration Agreement after notifying the employee. The employee may accept the modification through a reasonable period of continued employment. Section 10 imposes genuine obligations on both parties. Cf. Floss, 211 F.3d at 315

(finding arbitration agreement illusory where the company reserved the right to alter arbitration procedures without notifying or receiving consent from employees). The modification procedures set out in the Arbitration Agreement do not render the Agreement illusory.

### C.   Mutual Assent

Under Tennessee law, a contract must result from a meeting of the minds of the parties in mutual assent to the contract's terms. Higgins v. Oil, Chemical and Atomic Workers Int'l Union, Local No. 3-677, 811 S.W.2d 875, 879 (Tenn. 1991). "Although the question of mutual assent involves largely an objective analysis, the parties' intent remains relevant, in particular the circumstances surrounding the formation of the contract." Walker v. Ryan's Fam. Steak Houses, Inc., 400 F.3d 370, 383 (6th Cir. 2005). There is a general presumption that a party is bound by a signed contract expressing an agreement because both parties have a duty to learn a contract's contents before signing. See Giles v. Allstate Ins. Co., 871 S.W.2d 154, 156-57 (Tenn. Ct. App. 1993).

Arguing that he did not assent to the Arbitration Agreement, Johnson relies on the Sixth Circuit's decision in Walker. There, the court found no mutual assent because:

> Plaintiffs were presented with the Arbitration Agreement in a hurried fashion and told to simply sign if they wanted to be considered for employment. The agreements were presented to Plaintiffs on a "take it or leave it" basis, and Plaintiffs had no real bargaining power; they

had to sign the agreements if they wanted to be
considered for employment. Although the Arbitration
Agreements state that Plaintiffs had the right to
consult an attorney, in reality, they had no opportunity
to exercise that right because they had to sign the
agreements on the spot. Plaintiffs' educational
limitations (many have not completed high school and
were seeking jobs that would provide them poverty-level
wages) also were obvious. Finally, on those occasions
when [defendant's] managers took it upon themselves to
explain the Arbitration Agreement, they gave inaccurate
information about the arbitration process and did not
tell them that they were waiving their right to a jury
trial.

Walker, 400 F.3d at 384.

The facts in Walker are distinguishable from the facts here.
Although Johnson and Medina say that Bel-Shore employees were told
to sign the documents immediately after Jannetta's presentation,
they do not state what the consequences would have been if an
employee had refused to sign, asked for more time to read the
documents, or asked to speak to a lawyer. There was no clear "take
it or leave it" offer as in Walker. Johnson had a high-school-
level education (D.E. 13-1, PageID 87) and held a supervisory
position at Bel-Shore's Memphis warehouse that paid $18/hour-
$22/hour. (D.E. 1 at ¶ 30.) Jannetta's explanation of the
Arbitration Agreement, following the script provided with Medina's
Declaration, was not misleading. The explanation conveyed that the
arbitration process was mandatory and that employee claims would
not be heard by a jury. (D.E. 13-3, PageID 136.)  Johnson has not

overcome the presumption that a party is bound by a signed contract.

### D.   Knowing and Voluntary

Johnson argues that his consent to the Arbitration Agreement was not knowing and voluntary. Where there is an express agreement to arbitrate in lieu of litigation, the objecting party carries the burden of demonstrating that its consent to the agreement was not knowing and voluntary. See Tillman v. Macy's, Inc., 735 F.3d 453, 460 (6th Cir. 2013). To determine whether an express arbitration agreement is knowing and voluntary, courts apply "ordinary contract principles" and consider:

> (1) plaintiff's experience, background, and education;
> (2) the amount of time the plaintiff had to consider
> whether to sign the waiver, including whether the
> employee had an opportunity to consult with a lawyer;
> (3) the clarity of the waiver; (4) consideration for the
> waiver; as well as (5) the totality of the circumstances.

Morrison v. Cir. City Stores, Inc., 317 F.3d 646, 668 (6th Cir. 2003) (en banc); see also Walker, 400 F.3d at 381 (applying Morrison factors to dispute governed by Tennessee law). Application of the Morrison factors shows that Johnson's consent to the Arbitration Agreement was knowing and voluntary.

First, Johnson possessed sufficient experience, background, and education to consent to arbitration knowingly and voluntarily. In Sako v. Ohio Department of Administrative Services, the Sixth Circuit found that a plaintiff—who was a native French speaker,

15

had a high-school education, and had taken some English classes—
had sufficient experience, background, and education to understand
a waiver of federal claims. 278 F. App'x 514, 518–19 (6th Cir.
2008). In Hank v. Great Lakes Construction Co., the Sixth Circuit
held that a plaintiff with a GED and a post-secondary proficiency
in reading and comprehension had sufficient experience,
background, and education to agree to a release of claims
voluntarily and knowingly. 790 F. App'x 690, 699 (6th Cir. 2019).
Here, Johnson had a high-school-level education (D.E. 13-1, PageID
87) and held a supervisory position the required him to send daily
written reports (D.E. 1 at ¶ 29, 31). Johnson's Complaint contains
reproductions of emails that Johnson sent to co-workers that
demonstrate advanced literacy. (See D.E. 1 at 123.) Like the
plaintiffs in Sako and Hank, Johnson had sufficient experience,
background, and education to understand the Arbitration Agreement.

The second factor also weighs in favor of Bel-Shore. Viewing
the evidence in Johnson's favor, he was handed the Arbitration
Agreement and other documents in the middle of the workday and was
told to sign immediately. However, the second factor weighs in
favor of finding a knowing and voluntary waiver if the plaintiff
does not request more time to review the arbitration agreement or
consult an attorney. See Hank, 790 F. App'x at 700; Shupe v.
Asplundh Tree Expert Co., 566 F. App'x 476, 482–83 (6th Cir. 2014).
Neither Johnson nor any other Bel-Shore employee asked for time to

review the arbitration agreement or consult an attorney. (D.E. 13-3, PageID 134.)

Third, the Arbitration Agreement is sufficiently clear. Section 1 of the Agreement states, "[Employee] and Employer agree to submit all 'Claims' as defined below . . . to binding individual arbitration before a neutral arbitrator . . . ." (D.E. 10-1, PageID 60.) The Agreement defines "Claims" to include claims of discrimination, claims brought under federal statute, and any claim related to termination. The final section of the Agreement states, "I UNDERSTAND THAT THIS AGREEMENT REQUIRES ME TO ARBITRATE ANY AND ALL DISPUTES THAT ARISE OUT OF MY EMPLOYMENT." (D.E. 10-1, PageID 63.) Those unambiguous terms "leave no room for doubt about" their meaning. Gascho v. Scheurer Hosp., 400 F. App'x 978, 982 (6th Cir. 2010). Janetta also provided an adequate explanation of the Arbitration Agreement during his presentation to employees and encouraged employees to "carefully read and familiarize yourself with" the Arbitration Agreement. (D.E. 13-3, PageID 136.)

Fourth, as discussed above, continued employment and mutual obligation are sufficient consideration to support contract formation. See Fisher, 276 F. Supp. 2d at 895-96. Johnson worked at Bel-Shore for more than a year after signing the Arbitration Agreement and both Johnson and Bel-Shore were bound by the Arbitration Agreement.

Fifth, Johnson argues that the totality of the circumstances show that he did not knowingly and voluntarily agree to the Arbitration Agreement. For instance, Johnson says that he does not remember the first three pages of the Arbitration Agreement, was not allowed to keep a copy of the Arbitration Agreement, and the simultaneous distribution of the Handbook and Arbitration Agreement created confusion. The mere statement that a party does not remember receiving an agreement does not create a material issue of fact about knowing and voluntary waiver. See Boykin v. Fam. Dollar Stores of Michigan, LLC, 3 F.4th 832, 840 (6th Cir. 2021) ("A party thus cannot expect to obtain a trial under § 4 [of the FAA] simply by testifying that the party does not 'remember' signing an arbitration contract or receiving information about arbitration."). There is no evidence that Johnson asked for a copy of the Arbitration Agreement. See Hammond v. Floor & Decor Outlets of Am., Inc., No. 3:19-CV-01099, 2020 WL 6459642, at *9 (M.D. Tenn. Nov. 3, 2020) (placing burden on employee to ask for copies of documents). Jannetta's presentation separately explained the Handbook and Arbitration Agreement and clearly distinguished between the two documents. Johnson's alleged confusion was not justified.

Application of the Morrison factors shows that Johnson's consent to the Arbitration Agreement was knowing and voluntary.

### E.    Discovery

Johnson's Motion for Discovery consists of one sentence at the end of his Response. An unsupported motion at the end of a response is not permitted by the Rules and is not an adequate means of developing the issues. Johnson requests an opportunity to depose Medina "regarding his complete recollection of Defendant's strategy of deception to implement, use, and enforce the [Arbitration] Agreement against its employees including Johnson." Medina has provided a Declaration setting out the circumstances under which Bel-Shore employees received the Arbitration Agreement. He has provided the information relevant to Johnson's Response without the need for a deposition. Further discovery is not necessary to support Johnson's Response. The Motion for Discovery is **DENIED**.

### F.    Dismissal of Case Pending Arbitration

Bel-Shore has asked that the case be dismissed if the Court compels arbitration of all claims. Johnson has not asked the Court to stay the matter pending the resolution of arbitration. The FAA states that, after determining that a case is referrable to arbitration, a court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. The Sixth Circuit allows district courts to dismiss cases if all the claims will be resolved in arbitration and no party has asked for

a stay. See Andrews v. TD Ameritrade, Inc., 596 F. App'x 366, 372-73 (6th Cir. 2014) (finding dismissal appropriate where there is "nothing for the district court to do but execute the judgment"); Ozormoor v. T-Mobile USA, Inc., 354 Fed. App'x. 972, 975 (6th Cir. 2009) (holding that the FAA does not require district courts to stay suits pending arbitration); cf. Arabian Motors Grp. W.L.L. v. Ford Motor Co., 19 F.4th 938, 942 (6th Cir. 2021) (recognizing that dismissal may be appropriate where neither party asks for a stay). Here, dismissal is appropriate because all of Johnson's claims are subject to arbitration and neither party has asked for a stay pending the outcome of arbitration.

## V.  Conclusion

Bel-Shore's Motion to Dismiss and Compel is **GRANTED.** Johnson's Motion for Discovery is **DENIED.** This case is **DISMISSED WITHOUT PREJUDICE** to the parties' right to re-open the case for entry of an arbitration award or for any other relief to which the parties may be entitled. The parties are directed to proceed to arbitration in accordance with the terms of their agreement.

SO ORDERED this 9th day of June, 2022.

*/s/ Samuel H. Mays, Jr.*
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE

20